## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

MITCHELL WEST,                          :
                                        :
         **Petitioner,**          :         Civ. No. 17-5294 (MCA)
                                        :
   **v.**                             :
                                        :
WILLIE BONDS,                           :         OPINION
                                        :
        **Respondent.**          :
_____ :

## MADELINE COX ARLEO, U.S.D.J.

### I.     INTRODUCTION

Petitioner, Mitchell West ("Petitioner" or "West"), is a state inmate proceeding *pro se*
with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  For the following
reasons, Petitioner's habeas petition is denied and a certificate of appealability shall not issue.

### II.    FACTUAL AND PROCEDURAL BACKGROUND

The factual background is taken from the New Jersey Superior Court, Appellate
Division's opinion on Petitioner's direct appeal.

> On February 17, 2005, at approximately 5:25 p.m., the Jersey City
> police responded to a 9-1-1 call from Rashon Ponder, who stated
> that he had been shot.  Ponder was found in his car at the curb in
> the vicinity of Atlantic and Bergen Avenues.  He had been shot
> multiple times.  Detective Kevin Guy asked Ponder if he knew
> who shot him.  Ponder nodded his head yes, but refused to identify
> the shooter.
>
> Shortly thereafter, paramedics arrived and, after examining Ponder,
> informed the police that he was likely to die from his wounds.
> When Ponder was informed of his status, he again refused to
> disclose the name of the shooter.  However, on April 10, 2005,
> Ponder, who survived, disclosed to the police that his shooter was
> defendant.  Ponder told the police that he had initially refused to
> identify defendant because he was "afraid of dying," that he was

"still in shock" and that he was "afraid of [defendant]." Defendant was arrested on April 26, 2005.

One year after the shooting, on February 17, 2006, defendant's former girlfriend, Shamia Henderson, provided the police with additional corroborative evidence of defendant's identity, stating that in mid or late February, 2005, defendant had bragged to her that he had "handled business for his brother." "He shot up the guy or car." Henderson later learned that the victim was Ponder.

An investigation of the scene of the crime disclosed seven nine-millimeter bullet casings next to the passenger side of the car occupied by Ponder. No casings were found on the driver's side. Additionally, the police found four vials containing suspected cocaine in the street next to the passenger door. The police were unable to determine who possessed the vials. While in the emergency room, approximately $1,500 was found in Ponder's pockets.

Directly in front of the car driven by Ponder, the police found a Plymouth minivan with its engine running. Inside the minivan was a cell phone. At trial, the parties stipulated that the van and phone belonged to defendant.

Ponder was surgically treated for eighteen entry and exit gunshot wounds, spending twelve days in the hospital. He remains disabled by his injuries. Ponder received three wounds on the front of his right arm, three on the rear of his right arm, one in the armpit, one in the mid-chest, two in the upper right thigh, two in the lower right thigh, two in the upper left thigh, two in the lower left thigh, and one in the scrotal area. Bullets fractured his upper right arm and his left femur. Analysis determined that all of the bullets were fired from the same semi-automatic pistol.

According to Ponder, the shooting occurred after he became stopped in traffic. Defendant got out of his car, which was stopped in front of Ponder's, walked over to the passenger side of Ponder's vehicle, and started shooting through the open window. Ponder testified that he was able to guide his car to the curb, where it was found directly behind the minivan belonging to defendant. He then called 9-1-1, his son's mother and his cousin.

Ponder claimed that he had known defendant for more than ten years. When asked at trial if Ponder knew of any reason defendant would want to shoot him, Ponder replied that a week or a few days before, "[w]e had a little altercation, like, verbal dispute. That's it."

2

*State v. West*, No. A-3402-06T4, 2009 WL 2146882, at *1–2 (N.J. Super. Ct. App. Div. July 21, 2009). Petitioner was convicted by a jury of first-degree attempted murder, second-degree possession of a weapon for an unlawful purpose and third-degree unlawful possession of a weapon. He was sentenced to thirty years imprisonment subject to an eighty-five percent parole ineligibility period.

The Appellate Division affirmed Petitioner's conviction on appeal, but remanded the matter for resentencing on the weapons counts because the two offenses were improperly merged. *See id.* at *6. On remand, Petitioner received the same aggregate sentence. The New Jersey Supreme Court denied certification on Petitioner's direct appeal in October, 2009. (*See* ECF 8-10).

In March, 2010, Petitioner filed his first post-conviction relief ("PCR") petition in the New Jersey Superior Court. (*See* ECF 8-11). On July 15, 2011, the New Jersey Superior Court denied Petitioner's PCR petition in a written decision. (*See* ECF 8-16). On September 19, 2013, the Appellate Division affirmed that denial. *See State v. West*, No. A-2049-11T4, 2013 WL 5268933 (N.J. Sup. Ct. App. Div. Sept. 19, 2013). The New Jersey Supreme Court denied certification on Petitioner's first PCR petition on April 11, 2014. (*See* ECF 8-24).

As Petitioner's first PCR petition was progressing, he filed a second PCR petition in the New Jersey Superior Court in June, 2012. (*See* ECF 8-25). On October 5, 2012, the Superior Court dismissed the second PCR petition without prejudice because Petitioner had an appeal pending before the Appellate Division. (*See* ECF 8-26). Ultimately, on December, 2, 2014, the Appellate Division reversed the Superior Court's dismissal of the second PCR petition and remanded the matter for further proceedings. *See State v. West*, A-1294-12T3, 2014 WL 6751523 (N.J. Sup. Ct. App. Div. Dec. 2, 2014). In October, 2015, the New Jersey Superior

Court denied Petitioner's second PCR petition in a written decision and order. (*See* ECF 8-33 & 8-34). On September 13, 2016, the Appellate Division affirmed the denial of Petitioner's second PCR petition. (*See* ECF 8-38). On February 1, 2017, the New Jersey Supreme Court denied certification on Petitioner's second PCR petition. (*See* ECF 8-40).

In July, 2017, Petitioner filed this § 2254 habeas petition. Petitioner raises six claims in his petition; they are as follows:

1.  The prosecutor's remarks during summation violated Petitioner's due process rights ("Claim I").

2.  Permitting Petitioner's out-of-court statement to be admitted at trial infringed on Petitioner's right to cross-examination ("Claim II").

3.  Ineffective assistance of counsel for failing to investigate whether Petitioner was competent to stand trial ("Claim III").

4.  Ineffective assistance of counsel for failing to present a diminished capacity defense at trial ("Claim IV").

5.  Ineffective assistance of counsel for failing to advise Petitioner of his maximum sentence exposure upon conviction at trial which caused him to reject a plea offer ("Claim V").

6.  Ineffective assistance of counsel for failing to obtain a current report on Petitioner's mental health and presenting this as a mitigating factor in Petitioner's favor at sentencing ("Claim VI").

Respondent filed a response in opposition to the habeas petition. (*See* ECF 8). Thereafter, Petitioner filed a reply in support. (*See* ECF 11).

### III.     LEGAL STANDARD

A writ of habeas corpus for a person in custody under judgment of a state court can be granted only for violations of the Constitution, laws or treaties of the United States.  *See Engle v. Isaac*, 456 U.S. 107, 119 (1982); *see also Mason v. Myers*, 208 F.3d 414, 415 n.1 (3d Cir. 2000) (citing 28 U.S.C. § 2254).  Because Petitioner filed his petition for writ of habeas corpus after April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. 104–132, 110 Stat. 1214 (Apr. 24, 1996), applies.  *See Lindh v. Murphy*, 521 U.S. 320, 326 (1997).  Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d).

As a threshold matter, a court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'"  *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting 28 U.S.C. § 2254(d)(1)).  "'[C]learly established federal law' under § 2254(d)(1) is the governing legal principle set forth by the Supreme Court at the time the state court renders its decision."  *Id.* (citations omitted).  Having identified the governing principle of federal law, a habeas court must also ask whether the state court's application of clearly established federal law was "objectively unreasonable."  *See Williams v. Taylor*, 529 U.S. 362, 409 (2000).  Thus, "a federal court may not issue a writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established

federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Id.* at 411.

The AEDPA standard under § 2254(d) is a "difficult" one to meet; it is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  Review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.*

In applying AEDPA's standards, the relevant state court decision that is appropriate for federal habeas corpus review is the last reasoned state court decision.  *See Bond v. Beard*, 539 F.3d 256, 289–90 (3d Cir. 2008).  "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *see also Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (federal courts should "look through" later unexplained state court orders to find the last related state court decision that does provide a relevant rationale); *Blystone v. Horn*, 664 F.3d 397, 417 n.15 (3d Cir. 2011).  Furthermore, though AEDPA deference remains appropriate even as to summary state court rulings, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011) (citing *Harris v. Reed*, 489 U.S. 255, 265 (1989)).

Even when a state court decides a federal claim in a way that is "contrary to" or an unreasonable application Supreme Court precedent, this Court then applies *de novo* review to the claim to determine whether the petitioner is entitled to federal habeas relief.  *See Johnson v.*

*Williams*, 568 U.S. 289, 303 (2013) (citing *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007));

*Saranchak v. Sec'y Pa. Dep't of Corr.*, 802 F.3d 579, 589 (3d Cir. 2015) ("We accord no

deference to a state court's resolution of a claim if that resolution was contrary to or reflected an

unreasonable application of clearly established Supreme Court precedent, and we review the

underlying claim de novo. ") (citation omitted).

## IV.    DISCUSSION

### A.  Claim I

Petitioner asserts in Claim I that his due process rights were violated at trial by the

prosecutor's statements during summation.  Petitioner asserts the prosecutor's statements

regarding why Ponder did not immediately name Petitioner as his attacker were improper.  More

specifically, the prosecutor's statements at issue are as follows:

> You say, well, yeah, Mr. Conforti, but he was all-he was all but left
> for dead.  He thought he was dying.  He said to you-I submit to
> you his testimony was, I thought I was going to die, I thought I was
> dead.  So why then wouldn't he say at the scene who shot him?
>
> He has other concerns, ladies and gentlemen.  It's not just him.  If
> he were to die at the scene and tell them who shot him, who else
> does he have to worry about?  The mother of his child?  The child
> itself? ...
>
> Well, there's also someone else who knows something.  And that's
> the defendant.  The defendant knows that the victim saw him.  Put
> yourself in the victim's position.  Would you be anxious or able to
> jump up and say, the individual who's looking me in the eye right
> now that I know for ten years, Mitchell West, that's the one who
> shot me, that's the man who shot me?  Or would you think about
> your family?  I submit to you, you would think about your family
> because, if you thought you were going to die that day, you'd be
> damned concerned about your daughter or your son and their
> mother.  You have to look at why.
>
> He told you, as you sat here today, he was afraid.  He told you, on
> the day he was shot, he was afraid.  He told you, when he testified
> before the Violent Crimes Compensation Board, he was afraid.

Detective Armstrong told you, for two weeks, I talked to him and he was very afraid.  And then, finally, he told me.  You have to look at why, ladies and gentlemen.  It's not just an inconsistency.

And I want you to think back to when he was testifying and his demeanor.  Did you notice how he sat in his chair?  Did he lean forward, like an anxious and willing witness?  Did he lean forward and point in this man's face and say, that's the man that shot me?  Did he lean forward at all?  No.  He slumped back in that chair and he leaned as far back as he could.  And every time that door opened – I don't know if you noticed it, ladies and gentlemen, but I submit to you, every time that door opened, he looked to see how was coming out of that door.

(ECF 8-48 at 28-30).  Petitioner's defense counsel then objected.  The trial judge then stated,

"All right, I'll allow it."  (*Id.* at 30).

The last reasoned decision on this claim was from the Appellate Division during

Petitioner's direct appeal which analyzed the claim as follows:

Defendant argues that the prosecutor's comments were not supported by evidence at trial.  In fact, although Ponder called his child's mother after he was shot, Ponder did not disclose their conversation, and he cited only to his own fear.

Although the defense claims that the issue was partially raised below, we analyze it by plain error standards, determining that a nonspecific objection, interposed after additional argument by defense counsel relating to Ponder's appearance on the stand, was insufficient otherwise to preserve the issue.

Remarks are permissible if they are legitimate inferences from the facts.  *State v. Perry,* 65 N.J. 45, 48, 319 A.2d 474 (1974); *State v. Mayberry,* 52 N.J. 413, 437, 245 A.2d 481 (1968), *cert. denied,* 393 U.S. 1043, 89 S. Ct. 673, 21 L. Ed. 2d 593 (1969).  Such inferences may not go beyond facts presented to the jury.  *State v. Farrell,* 61 N.J. 99, 103, 293 A.2d 176 (1972).  A prosecutor may only comment on the facts shown by or reasonably to be inferred from the evidence.  There is no error so long as the prosecutor confines himself in that fashion.  Ultimately, it is for the jury to decide wither to draw the inferences the prosecutor urged. *State v. Carter,* 91 N.J. 86, 125, 449 A.2d 1280 (1982).

In the present case, we see no basis for the inference that was drawn by the prosecutor.  The evidence suggested that the shooting was the result of a personal dispute between Ponder, defendant and their brothers over drugs.  There was no evidence of any threat to other relatives, or that retribution on them would occur if Ponder identified defendant as his attacker.

However, we do not find that the prosecutor's statement was "of such a nature as to have been clearly capable of producing an unjust result...."  R. 2:10-2; *State v. Macon,* 57 N.J. 325, 335-36, 273 A.2d 1 (1971).  We have held that "[g]enerally, if the defense does not object to the alleged improper remarks, those remarks will not be considered prejudicial," and that "the failure to object suggests that at the time defense counsel did not believe the remarks were prejudicial...."  *State v. Atkins,* 405 N.J. Super. 392, 401, 964 A.2d 845 (App. Div. 2009).  Clearly, the failure to object deprives the court of an opportunity to take curative action.  *Ibid.*

Here, the prosecutor's remarks were relatively fleeting in nature, and the trial judge instructed the jury that it was not to consider "[a]rguments, statements, remarks, openings, [and] summations" as evidence in the case.  Further, the State presented additional evidence connecting defendant with the crime, including Ponder's testimony and the testimony of defendant's girlfriend, Henderson, that defendant had admitted to the crime.  Additionally, the parties stipulated that defendant was in possession of the minivan left running in front of the car in which Ponder was shot, as well as the cellphone found in the van.  Police testimony suggested that the minivan was connected to the shooting, since it was parked directly in front of Ponder's car, it had been left running, and it was unoccupied at the time of the police's arrival.  Thus, substantial evidence was adduced at trial in support of defendant's conviction. *See, State v. Feaster,* 156 N.J. 1, 63-64, 716 A.2d 395 (1998) (holding under a plain error standard that the defendant was not denied a fair trial when "it was the weight of the evidence ... that led to this capital murder conviction rather than the prosecutor's improper comments during summation.").

The result might be different if the error affected a key aspect of defendant's conviction.  For instance, in *State v. Frost,* 158 N.J. 76, 727 A.2d 1 (1999) the Court reversed the defendants' convictions for drug-related crimes when the prosecutor's improper remarks related to the credibility of the testifying officers, and the "entire case rested on the testimony of the officers."  *Id.* at 87, 727 A.2d 1. *See also State v. Walden,* 370 N.J. Super. 549, 561, 851 A.2d 758 (App. Div.), *certif. denied,* 182 N.J. 148, 862 A.2d 56 (2004)

> (reversing a conviction in a case in which the prosecutor improperly bolstered a witness's credibility in summation, when there was no eyewitness identification, no forensic evidence linking the defendant to the crime, and the witness's testimony "was critical to defendant's conviction.").  But here, the issue of why Ponder was initially unwilling to identify defendant as the shooter, although professing to know the identity of his assailant, was peripheral to defendant's guilt.  We thus find no plain error to have been presented.

*West*, 2009 WL 2146882, at *3–4.

A criminal defendant's due process rights are violated if prosecutorial misconduct renders a trial fundamentally unfair.  *See Darden v. Wainwright,* 477 U.S. 168, 181–83 (1986).  A habeas petition will be granted for prosecutorial misconduct only when the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Id.* at 181 (internal quotation marks and citation omitted).  A prosecutorial misconduct claim is examined in "light of the record as a whole" in order to determine whether the conduct "had a substantial and injurious effect or influence" on the jury's verdict.  *See Brecht v. Abrahamson,* 507 U.S. 619, 637-38 (1993).  A "reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant."[1]  *Moore v. Morton,* 255 F.3d 95, 107 (3d Cir. 2001).

The Appellate Division's denial of this claim was not contrary to or an unreasonable application of clearly established federal law.  The Appellate Division examined the prosecutor's offensive actions in the context of the whole trial, noting that the conduct did not relate to something critical *per se* to Petitioner's conviction.  This is especially true given the other evidence produced at trial as noted by the Appellate Division, such as Petitioner's vehicle and

---

[1] In this case, while the Appellate Division only cited to state cases in deciding this claim, their requirements parallel those of the federal cases cited above.

cellphone being found at the scene of the crime as well as the testimony of Petitioner's girlfriend

that also implicated Petitioner.  Thus, this was not a case where the sole testimony against

Petitioner was from the victim.  Additionally, the jury was instructed by the trial judge that they

needed to base their verdict on the evidence, and that attorney arguments during summation were

not evidence.  (*See* ECF 8-49 at 11-12).  The jury is presumed to have followed these

instructions.  *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (citation omitted).

Accordingly, for these reasons, Petitioner is not entitled to relief on this claim.  Claim I is

denied.

B.  <u>Claim II</u>

In Claim II, Petitioner asserts that the trial court erred when permitted a statement made

by Petitioner out of court to be admitted.  Petitioner claims this infringed on his right to cross-

examine a witness.  The last reasoned decision on this claim was from the Appellate Division on

Petitioner's direct appeal.  That court decided this claim as follows:

> Prior to trial, the prosecutor indicated that he intended to introduce
> at trial a statement against interest made by defendant to the police
> on March 25, 2005 following an incident in which defendant was
> fired upon.  When asked who fired the shots, defendant stated that
> he believed that the perpetrators were "Lemon" and "Rock"
> (Ponder and his brother), with whom defendant had been having a
> dispute over the sale of bricks of cocaine.  The trial judge
> permitted the statement to be used in a sanitized form that omitted
> any reference to drugs as the subject of the dispute.  However, the
> statement was not introduced by the State at trial.
>
> During the course of trial, however, the defense sought to cross-
> examine a police witness regarding the quantities of cash found on
> Ponder in the emergency room and to raise the inference that the
> money constituted proceeds from the sale of drugs.  The defense
> argues that such evidence would have supported a claim of third-
> party culpability arising from a drug deal gone bad.  The trial judge
> precluded the line of inquiry, stating: "I'm telling you, you bring
> out that Mr. Ponder's a drug dealer to argue that somebody shot

> him over drugs, your defendant's statement over-a beef with him
> over drugs is coming in.... You can't have it both ways."
>
> While defendant claims that the judge's ruling improperly
> foreclosed cross-examination of the police witness, we view the
> matter otherwise.  As the trial judge properly recognized, defense
> counsel's line of questioning would have opened the door to the
> admission of an unsanitized version of defendant's statement to the
> police regarding his dispute with Ponder over the sale of drugs,
> since that concept "operates to prevent a defendant from
> successfully excluding from the prosecution's case-in-chief
> inadmissible evidence and then selectively introducing pieces of
> this evidence for the defendant's own advantage, without allowing
> the prosecution to place the evidence in its proper context." *State
> v. James,* 144 N.J. 538, 554, 677 A.2d 734 (1996).

*West*, 2009 WL 2146882, at *4–5.

Petitioner classifies the purported right that was violated as his right to cross-examine a witness.  There is no doubt that "the 'right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal.'" *Lambert v. Warden Greene SCI,* 861 F.3d 459, 471 (3d Cir. 2017) (quoting *Pointer v. Texas*, 380 U.S. 400, 405 (1965)).  However, as aptly noted by the Appellate Division, the issue presented in this claim is not about the right to confrontation and cross-examination.  Indeed, the trial court did not prevent Petitioner from cross-examining the officer as he saw fit.  Instead, the underlying issue is the evidentiary decision that if Petitioner sought to cross-examine the officer in a particular fashion, he opened the door for the prosecution to introduce evidence concerning Petitioner's previous statement that there was a dispute he had with Ponder over drugs.

It is well-established that the violation of a right created by state law is not cognizable as a basis for federal habeas relief.  *See Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'") (quoting *Lewis v. Jeffers,* 497 U.S. 764, 680 (1990)).  Thus, to the extent that Petitioner is

claiming that the trial court violated state law through its "opening the door" decision, Petitioner is not entitled to federal habeas relief.

Instead, a petitioner cannot obtain relief for any purported error in a state law evidentiary ruling at his criminal trial unless it rises to the level of a deprivation of due process. *See Estelle,* 502 U.S. at 70 (Due Process Clause guarantees fundamental elements of fairness in a criminal trial) (quoting *Spencer v. Texas,* 385 U.S. 554, 563–64 (1967)). For a habeas petitioner to prevail on a claim that an evidentiary error amounted to a deprivation of due process, he must show that the error was so pervasive as to have denied him a fundamentally fair trial. *See Keller v. Larkins,* 251 F.3d 408, 413 (3d Cir. 2001) (holding that admission of evidence may violate due process where the evidence is so inflammatory as to "undermine the fundamental fairness of the entire trial"); *see also Cox v. Warren,* No. 11–7132, 2013 WL 6022520, *8 (D.N.J. Nov.13, 2013).

The Appellate Division's denial of this claim was not contrary to or an unreasonable application of clearly established federal law. Indeed, as the Appellate Division noted, Petitioner's suggested line of cross-examination would have "opened the door" to permit the government to inquire about Petitioner's drug dispute with Ponder.

> "The doctrine of opening the door allows a party to elicit otherwise inadmissible evidence when the opposing party has made unfair prejudicial use of related evidence." *State v. James*, 144 N.J. 538, 554, 677 A.2d 734 (1996) (citation omitted); *see also State v. Rucki*, 367 N.J. Super. 200, 207, 842 A.2d 290 (App. Div. 2004). The doctrine also "provides an adverse party the opportunity to place evidence into its proper context." *Alves v. Rosenberg*, 400 N.J. Super. 553, 564, 948 A.2d 701 (App. Div. 2008).

*State v. Hawkins*, No. A-4848-14T4, 2018 WL 1701415, at *8 (N.J. Super. Ct. App. Div. Apr. 9, 2018).

This Court finds no fault with the Appellate Division's decision that Petitioner's line of questioning would have "opened the door."  At a minimum, it does not rise to the level that the denial of this claim by the Appellate Division was contrary to or an unreasonable application of clearly established law regarding an evidentiary decision causing a fundamentally unfair trial. Accordingly, Claim II is denied.

   C. <u>Claim III</u>

In Claim III, Petitioner argues that counsel was ineffective for failing to investigate whether Petitioner was competent to stand trial.  While not specifically addressed by either party, this Court must first determine what standard of review applies to Claim III.

Petitioner first raised this claim in his first *pro se* petition for PCR.  (*See* ECF 8-11 at 3 ("Trial counsel was ineffective for failing to investigate defendant's background in order to determine if defendant was fit to stand trial.")).  Within that *pro se* filing, Petitioner also argued that trial counsel was ineffective for failing to determine if his mental disorders formed the basis for a diminished capacity/insanity defense.  (*See id.* at 5).  Petitioner's first counseled PCR brief focused on trial counsel's purported failure to pursue a diminished capacity defense, with little to no mention of Petitioner's claim in his *pro se* filing that trial counsel was also ineffective for failing to investigate Petitioner's *competency* to stand trial.  (*See* ECF 8-12 at 23-27).  The New Jersey Superior Court then only specifically analyzed Petitioner's claim that trial counsel was ineffective for failing to pursue a diminished capacity defense.  (*See* ECF 8-16 at 7-8).

Petitioner's *pro se* brief on appeal did not raise a claim that counsel was ineffective for failing to investigate his competency to stand trial. (*See* ECF 8-21).  Similarly, Petitioner's counseled brief also did not raise the claim that counsel was ineffective for failing to investigate Petitioner's competency to stand trial.  Nevertheless, the counseled brief addressed at length

Petitioner's claim that counsel was ineffective in failing to pursue a diminished capacity defense. (*See* ECF 8-18 at 18-31).  As discussed *infra*, the Appellate Division denied this claim in its written opinion dated September 19, 2013.  *See West*, 2013 WL 5268933.  Petitioner's petition for certification to the New Jersey Supreme Court raised Petitioner's claim that counsel was ineffective in failing to pursue a diminished capacity defense at trial (*see* ECF 8-23 at 5), but not a claim that trial counsel was ineffective in failing to investigate whether Petitioner was competent to stand trial.  As previously noted, the New Jersey Supreme Court denied Petitioner's petition for certification.  (*See* ECF 8-24).

In Petitioner's second PCR petition, he asserted that *PCR counsel* was ineffective for failing to obtain an expert during the PCR proceedings to determine whether Petitioner was fit for trial in 2006.  (*See* ECF 8-25 at 3-4).  Ultimately, the Appellate Division determined that Petitioner's second PCR petition was procedurally barred and agreed that *PCR counsel's* decisions were strategically reasonable.  (*See* ECF 8-38 at 3-4).

Given this history, Petitioner's argument that *trial counsel* was ineffective for failing to investigate whether Petitioner was *competent* to stand trial is unexhausted.  A state prisoner applying for a writ of habeas corpus under § 2254 in federal court must first "exhaust the remedies available in the courts of the State," unless "(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant."  28 U.S.C. § 2254(b)(1).  A petitioner must exhaust state remedies by fairly presenting his federal constitutional claims to each level of the state courts empowered to hear those claims, either on direct appeal or in collateral post-conviction relief proceedings.  *See, e.g., O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999) (announcing the rule "requiring state prisoners to file petitions for discretionary review when that review is part of the ordinary

appellate review procedure in the State"); *see also* 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.").

> A petitioner can 'fairly present' his claims through: (a) reliance on pertinent federal cases; (b) reliance on state cases employing constitutional analysis in like fact situations; (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution; and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Nara v. Frank*, 488 F.3d 187, 198 (3d Cir. 2007) (citing *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999)) (footnote omitted). "Even if a state court refuses the claim on procedural grounds, it is still exhausted as long as the state court had the opportunity to address it." *Id.* (citing *Bond v. Fulcomer*, 864 F.2d 306, 309 (3d Cir. 1989); *Pursell v. Horn*, 187 F. Supp. 2d 260, 2288 (W.D. Pa. 2002)).

Despite the exhaustion requirement, "a federal court [may] deny an unexhausted claim on the merits 'if it is perfectly clear that the applicant does not raise even a colorable federal claim.'" *Carpenter v. Vaughn,* 296 F.3d 138, 146 (3d Cir. 2002) (quoting *Lambert v. Blackwell,* 134 F.3d 506, 514–15 (3d Cir. 1997) (construing 28 U.S.C. § 2254(b)(2))); *see also* 28 U.S.C. § 2254(b) (2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

Petitioner failed to exhaust his claim that *trial counsel* was ineffective in failing to pursue whether he was *competent to stand trial* because he only raised it in his first *pro se* PCR petition to the New Jersey Superior Court. He did not raise it to the Appellate Division nor to the New Jersey Supreme Court. Thus, he failed to present it to each level of the New Jersey state courts.

While Petitioner did raise his failure of trial counsel to pursue a diminished capacity defense claim to all three levels of the New Jersey state courts, as one court has aptly noted, "[t]he question of competence is distinct from that of diminished capacity, which focuses on a defendant's ability to form the specific intent . . . at the time of the [crime]." *Mobley v. Coleman*, No. 09-1558, 2013 WL 3943141, at *7 n.9 (E.D. Pa. July 31, 2013). Thus, the fact that Petitioner exhausted his claim that counsel was ineffective for failing to pursue a diminished capacity defense does not mean that he exhausted his claim that counsel was ineffective for failing to exhaust his claim that counsel should have investigated Petitioner's competence to stand trial. Petitioner's second PCR petition does not change this result. In that proceeding, he asserted that *PCR counsel* was ineffective, not that *trial counsel* was ineffective. Despite this lack of exhaustion, this Court can deny this claim if it determines that the claim is not "colorable."

To be competent to stand trial, the defendant must have (1) sufficient ability at the pertinent time to consult with his lawyers with a reasonable degree of rational understanding, and (2) a rational, as well as factual understanding, of the proceedings against him. *See Drope v. Missouri,* 420 U.S. 162, 172 (1975) (citing *Dusky v. United States,* 362 U.S. 402, 402 (1960)). There is no fixed formula for determining whether these requirements are met. Rather, the Court must consider the totality of the circumstances, including "evidence of a defendant's irrational behavior, [the defendant's] demeanor at trial, and any prior medical opinion on competence to stand trial." *Drope,* 420 U.S. at 180.

In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court articulated the two-prong test for demonstrating when counsel is deemed ineffective. First, the petitioner must show that considering all the circumstances, counsel's performance fell below an objective standard of

reasonableness.  *See id.* at 688; *see also Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (noting that it is necessary to analyze an ineffectiveness claim considering all circumstances) (citation omitted).  A petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment.  *See Strickland*, 466 U.S. at 690.  Under this first prong of the *Strickland* test, scrutiny of counsel's conduct must be "highly deferential."  *See id.* at 689.  Indeed, "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id.* at 690.  The reviewing court must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.* at 689.  If counsel makes "a thorough investigation of law and facts" about his plausible options, the strategic choices he makes accordingly are "virtually unchallengeable."  *Gov't of Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1432 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690-91).  If, on the other hand, counsel pursues a certain strategy after a less than complete investigation, his choices are considered reasonable "to the extent that reasonable professional judgments support the limitations on investigation."  *Rolan v. Vaughn*, 445 F.3d 671, 682 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 690-91).

The second prong of the *Strickland* test requires the petitioner to affirmatively prove prejudice.  *See* 466 U.S at 693.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  *Id.*; *see also McBridge v. Superintendent, SCI Houtzdale*, 687 F.3d 92, 102 n.11 (3d Cir. 2012).  "This does not require that counsel's actions more likely than not altered the outcome, but the difference between *Strickland's* prejudice standard and a more-probable-than-

not standard is slight and matters only in the rarest case.  The likelihood of a different result must

be substantial, not just conceivable."  *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011)

(internal quotation marks and citations omitted).

"With respect to the sequence of the two prongs, the *Strickland* Court held that 'a court

need not determine whether counsel's performance was deficient before examining the prejudice

suffered by the defendant as a result of the alleged deficiencies.... If it is easier to dispose of an

ineffectiveness claim on the ground of lack of sufficient prejudice... that course should be

followed.'"  *Rainey v. Varner*, 603 F.3d 189, 201 (3d Cir. 2010) (quoting *Strickland*, 466 U.S. at

697).

In the context of trial counsel's failure to request a competency hearing or evaluation, the

United States Court of Appeals for the Third Circuit has stated that:

> [c]ounsel's failure to request the trial court to order a hearing or
> evaluation on the issue of the defendant's competency ... could
> violate the defendant's right to effective assistance of counsel
> provided there are sufficient indicia of incompetence to give
> objectively reasonable counsel reason to doubt the defendant's
> competency, and there is a reasonable probability that the
> defendant would have been found incompetent to stand trial had
> the issue been raised and fully considered.

*Taylor v. Horn,* 504 F.3d 416, 438 (3d Cir. 2007) (quoting *Jermyn v. Horn,* 266 F.3d 257, 283

(3d Cir.2001)).

Petitioner fails to make out a "colorable" claim in Claim III.  He fails to show there is a

reasonable probability that he would have been found incompetent to stand trial had the issue

been raised.  Dr. Hasson's 2002 report found Petitioner was competent to stand trial then.  (*See*

ECF 8-6 at 29, 31).  Dr. Greenfield's 2011 report indicated that Petitioner was competent to

stand trial at the time of his mental evaluation in 2010.  (*See* ECF 8-20 at 68).  While these

reports were completed based on evaluations four years prior and four years after Petitioner's

2006 trial, neither indicates that Petitioner was incompetent at the time the reports were created.

Furthermore, Petitioner has come forward with no medical evidence to indicate to a reasonable

probability that he would have been declared incompetent to stand trial in between these two

evaluations in 2006.  Thus, given these circumstances, this Court finds Petitioner has failed to

make a "colorable" showing of *Strickland*'s prejudice prong on Claim III.  *See Smith v. Wetzel*,

No. 13-2410, 2016 WL 8761773, at *30 (E.D. Pa. June 30, 2016) (finding Petitioner's claim fails

on the second prong of *Strickland* because he cannot demonstrate a reasonable probability that he

would have been found incompetent noting that Petitioner failed to produce evidence indicating

he was incompetent to stand trial), *report and recommendation adopted by*, 2017 WL 1397253

(E.D. Pa. Apr. 18, 2017).  Accordingly, Claim III is denied.

D.  Claim IV

In Claim IV, Petitioner alleges that counsel was ineffective when she failed to pursue a

diminished capacity defense at trial.  The last reasoned decision on this claim was from the

Appellate Division that affirmed the denial of Petitioner's first PCR petition.  That court

analyzed this claim as follows:

> Claims of constitutionally ineffective assistance of counsel are well
> suited for post-conviction review.  R. 3:22–4(a)(2); *Preciose,
> supra,* 129 N.J. at 460.  In determining whether a defendant is
> entitled to such relief, New Jersey courts apply the test articulated
> by the United States Supreme Court in *Strickland v. Washington,*
> 466 U.S. 668, 694, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d 674, 698
> (1984), and *United States v. Cronic,* 466 *U.S.* 648, 658–60, 104 S.
> Ct. 2039, 2046–47, 80 L. Ed. 2d 657, 667–68 (1984).  *Preciose,
> supra,* 129 N.J. at 463; *State v. Fritz,* 105 *N.J.* 42, 58 (1987).
>
> Under the first prong of the *Strickland* test, a "defendant must
> show that [defense] counsel's performance was deficient."
> *Strickland, supra,* 466 U.S. at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d
> at 693.  Under the second prong, a defendant must demonstrate "a
> reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different." *Id.* at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 698.

In demonstrating that counsel's performance was deficient under the first prong of *Strickland,* a defendant must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Fritz, supra,* 105 N.J. at 52 (quoting *Strickland, supra,* 466 U.S. at 689, 104 S. Ct. at 2065, 80 L. Ed. 2d at 694) (internal quotation marks omitted). Further, because prejudice is not presumed, *ibid.,* in satisfying the second prong, a defendant must typically demonstrate "how specific errors of counsel undermined the reliability of the finding of guilt." *Cronic, supra,* 466 U.S. at 659 n. 26, 104 S. Ct. at 2047, 80 L. Ed. 2d at 668; *see Roe v. Flores–Ortega,* 528 U.S. 470, 482, 120 S. Ct. 1029, 1037, 145 L. Ed. 2d 985, 998 (2000). There must be "a probability sufficient to undermine confidence in the outcome." *Strickland, supra,* 466 U.S. at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 698.

We start our analysis with the issue of trial counsel's failure to investigate and present a defense based on diminished capacity. We note that the defense presented by trial counsel was consistent with her client's position at the time that he was not the shooter. In addition, West does not allege that he told his trial counsel that he was under the influence of drugs or alcohol at the time of the shooting or about his prior mental health problems.

However, trial counsel stated at sentencing that she would have handled the case differently had she been aware of issues related to West's mental status that were disclosed in his pre-sentence report (PSR). The report disclosed that there had been concerns about West's mental status in connection with a prior offense, resulting in a psychological evaluation in 2002. Consequently, we will assume for the purposes of our analysis that West has satisfied the first *Strickland* prong.

The report of Daniel P. Greenfield, M.D., which was submitted by West in support of his PCR petition, concludes that, although he was competent to stand trial, there was a basis for a "hybrid" defense based on intoxication, N.J.S.A. 2C:2–8, and diminished mental capacity, N.J.S.A. 2C:4–2. Both statutes require that the applicable condition negate an element of the offense.

As the PCR judge correctly observed, there is no evidence in the record to support the factual proposition that West was intoxicated at the time of the shooting. In his PCR petition, West asserts only

that "in the months leading up to his arrest ... [he] used PCP on a regular basis."  He makes no assertion that he was intoxicated at the time of the shooting.  That he may have been intoxicated at other times is not a sufficient basis for purposes of establishing a prima facie case.

On direct appeal, in upholding the trial judge's refusal to apply mitigating factor four, N.J.S.A. 2C:44–1(b)(4) ("substantial grounds tending to excuse or justify the defendant's conduct, though failing to establish a defense"), we determined that the prior mental evaluations contained in the PSR were insufficient to warrant even the application of a mitigating factor applicable to sentencing.  Admittedly, Greenfield's report went beyond the findings of the earlier report in terms of opining that there was a potential "hybrid" defense.

Having considered Greenfield's report in light of the underlying facts in the record and the applicable law, we conclude that West has not presented a prima facie case on the issue of the "hybrid" defense under prong two because Greenfield's opinion with respect to the defense is not sufficiently based in facts found in the record.  Even taking Greenfield's opinion concerning West's mental capacity as accurate, it does not present a basis for a defense under N.J.S.A. 2C:4–2.

*West*, 2013 WL 5268933, at *3–5.

Merely because Dr. Greenfield indicated that a diminished capacity defense was a *possibility* in his 2011 report does not mean that the outcome of the proceeding *would have been different to a reasonable probability* had counsel pursued this defense.  New Jersey's diminished capacity defense provides that "[e]vidence that the defendant suffered from a mental disease or defect is admissible whenever it is relevant to prove that the defendant did not have a state of mind which is an element of the offense."  N.J. Stat. Ann. § 2C:4–2.  However, given the trial record, Petitioner fails to show to a reasonable probability that the requisite state of mind of intending to kill Ponder was lacking.

This is particularly the case given Ponder's testimony of how the shooting transpired.  Ponder noted that Petitioner and he had had a verbal dispute prior to the shooting. (*See* ECF 8-46

at 18). Petitioner approached Ponder from his car which was in front of his and shot at him several times at close range while Petitioner remained in his car. (*See id.* at 17, 18, 19, 32).

Henderson's testimony against Petitioner lends further support that he possessed the requisite state of mind of intending to kill Ponder.  To reiterate, she testified that Petitioner bragged about shooting up a guy in a car because he had to handle some business for his brother. (*See* ECF 8-47 at 9-10).

Given the trial testimony, Petitioner fails to show to a reasonable probability that a diminished capacity defense would have successfully negated an element of the offenses for which he was convicted of.  *See, e.g.*, *Jacobs v. Horn*, 395 F.3d 92, 109 (3d Cir. 2005) (rejecting *Strickland* claim for failure to present expert testimony of petitioner's mental disorders, because testimony would not have changed the outcome of trial due to witness testimony that petitioner admitted to the homicide); *Muniz v. Powell*, No. 13-178, 2015 WL 511618, at *9 (D.N.J. Feb. 6, 2015) (petitioner failed to show prejudice noting in part that witness testimony showed that petitioner acted on his own volition possessing the necessary intent for the crimes charged); *Howard v. Horn*, 56 F. Supp. 3d 709, 721 (E.D. Pa. 2014) (where record indicates Petitioner had sufficient intent to kill, petitioner cannot show that "he was prejudiced by counsel's failure to investigate and present psychiatric evidence to pursue a diminished capacity defense"); *see also Zettlemoyer v. Fulcomer*, 923 F.2d 284, 295-96 (3d Cir. 1991) ("Evidence of specific intent to kill may disprove the defense of diminished capacity.")

Accordingly, Petitioner is not entitled to relief as the denial of this claim was not an unreasonable application of *Strickland*'s prejudice prong. Claim IV is therefore denied.

E.  <u>Claim V</u>

In Claim V, Petitioner argues that counsel was ineffective when she failed to advise

petitioner of the maximum sentence exposure if he went to trial and lost which led Petitioner to

reject a plea offer.  The last reasoned decision on this claim was from the Appellate Division that

affirmed the denial of Petitioner's first PCR petition.  That court analyzed this claim as follows:

> West next argues that trial counsel was constitutionally ineffective
> because she failed to advise him that he was facing a mandatory,
> rather than a voluntary, extended term.  The State's last plea offer
> was an eighteen-year sentence subject to NERA.  In his PCR
> petition, West stated that he rejected the State's plea offer because
> he had been advised by "jailhouse inmates" that his maximum
> exposure was twenty years, but that he would not have done so had
> his attorney advised him that the extended term was mandatory.
> The transcript of the plea-cutoff hearing reflects that defense
> counsel was under the mistaken impression that the extended term
> was discretionary rather than mandatory, and that her error was not
> corrected by the prosecutor or the trial judge.  In view of trial
> counsel's error, we find that West has satisfied the first prong of
> the *Strickland* test.
>
> Nevertheless, the trial judge clearly explained to West that he was
> exposed to a possible life sentence, which would mean sixty-three
> years in custody without possibility of parole.  Faced with that
> information, West still rejected the plea offer.  The actual sentence
> was thirty years.
>
> A defendant must demonstrate with "'reasonable probability'" that
> the result would have been different had he received proper advice
> from his plea attorney.  *Lafler v. Cooper,* 566 U.S. —— at ——,
> 132 S. Ct. 1376, 1384, 182 L. Ed. 2d, 398, 406–07 (2012) (quoting
> *Strickland, supra,* 466 U.S. at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d
> at 698).  We see nothing in the record to suggest that West would
> have pled guilty had he been told that the extended term was
> mandatory.  He was clearly informed that his exposure far
> exceeded the twenty-year maximum predicted by the "jailhouse
> inmates," and he demonstrated no interest in changing his plea.  It
> was West's defense at trial that he was not the shooter.  He has not
> taken a contrary position in his PCR petition.  It is clear from the
> plea-cutoff transcript that, at the time, West anticipated that the
> victim would not appear at trial.  There is nothing in the record to
> suggest that West would have been willing to enter a plea had he

known that the extended term was mandatory.  Consequently, we
find that West has failed to satisfy the second *Strickland* prong.

*West*, 2013 WL 5268933, at \*5.

Petitioner's Sixth Amendment right to counsel extends to the plea-bargaining process.
*See Lafler v. Cooper*, 566 U.S. 156, 162, 132, S. Ct. 1376, 1384 (2012).  "[C]ounsel is required
to give a defendant enough information "'to make a reasonably informed decision whether to
accept a plea offer.'""  *United States v. Bui*, 795 F.3d 363, 367 (3d Cir. 2015) (quoting *Shotts v.
Wetzel*, 724 F.3d 364, 376 (3d Cir. 2013) (quoting *United States v. Day*, 969 F.2d 39, 43 (3d Cir.
1992))).  Potential sentencing exposure is an important factor in a defendant's decision-making
process.  *See id.*  Indeed, "[k]nowledge of the comparative exposure between standing trial and
accepting a plea offer will often be crucial to the decision whether to plead guilty."  *Day*, 969
F.2d at 43.  "A defendant who rejects a guilty plea and receives a more severe sentence after trial
makes a claim of ineffective assistance when 'he alleges that the advice he received was so
incorrect and so insufficient that it undermined his ability to make an intelligent decision about
whether to accept the offer.'"  *Morris v. Adm'r New Jersey State Prison*, 770 F. App'x 601, 605
(3d Cir. 2019) (quoting *Day*, 969 F.2d at 43).  In the context of rejecting a plea, a petitioner must
show that "'but for counsel's deficient performance there is a reasonable probability he and the
trial court would have accepted the guilty plea' and the resulting sentence would have been
lower."  *Shotts*, 724 F.3d at 376 (citing *Lafler*, 132 S. Ct. at 1391).  However, courts should be
"wary" of claims that trial counsel did not adequately advise a defendant about the benefits and
consequences of a plea offer because "defendants will always want the best of both worlds: the
chance at acquittal at trial, yet the chance to plead guilty if the trial defense fails."  *Day*, 969 F.2d
at 46 n.9.

As noted by the Appellate Division, Petitioner was advised during the plea cutoff hearing about the last plea offer from the government – eighteen years – as well as the possibility that he faced life imprisonment if he went to trial and was convicted.  (*See* ECF 8-41 at 3).  Petitioner indicated to the state court that he was aware he was facing a life sentence if he went to trial and was convicted.  (*See id.*)  Given this evidence that Petitioner was expressly notified in open court about the sentence exposure he faced if he went to trial, and Petitioner's affirmation of such, the Appellate Division's denial of this claim was not an unreasonable application of *Strickland*'s prejudice prong.

Claim V is therefore denied.

F.  <u>Claim VI</u>

Petitioner asserts in his final claim that counsel was ineffective when she failed to obtain a report on Petitioner's mental health to assist in mitigating Petitioner's sentence.  Petitioner raised this claim in his reply brief in his first PCR petition.  (*See* ECF 8-14 at 5-6).  However, the New Jersey Superior Court did not address the claim in its opinion.  Petitioner then raised this claim on appeal to the Appellate Division which summarily denied it.  (*See* ECF 8-22 at 13).  This summary denial is entitled to AEDPA deference on habeas review.  *See Harrington*, 562 U.S. at 99.

New Jersey provides a list of aggravating and mitigating factors a judge is to consider before arriving at a criminal sentence.  The aggravating factors are as follows:

> (1) The nature and circumstances of the offense, and the role of the actor therein, including whether or not it was committed in an especially heinous, cruel, or depraved manner;
> (2) The gravity and seriousness of harm inflicted on the victim, including whether or not the defendant knew or reasonably should have known that the victim of the offense was particularly vulnerable or incapable of resistance due to advanced age, ill-health, or extreme youth, or was for any other reason substantially

incapable of exercising normal physical or mental power of resistance;

(3) The risk that the defendant will commit another offense;

(4) A lesser sentence will depreciate the seriousness of the defendant's offense because it involved a breach of the public trust under chapters 27 and 30, or the defendant took advantage of a position of trust or confidence to commit the offense;

(5) There is a substantial likelihood that the defendant is involved in organized criminal activity;

(6) The extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted;

(7) The defendant committed the offense pursuant to an agreement that he either pay or be paid for the commission of the offense and the pecuniary incentive was beyond that inherent in the offense itself;

(8) The defendant committed the offense against a police or other law enforcement officer, correctional employee or fireman, acting in the performance of his duties while in uniform or exhibiting evidence of his authority; the defendant committed the offense because of the status of the victim as a public servant; or the defendant committed the offense against a sports official, athletic coach or manager, acting in or immediately following the performance of his duties or because of the person's status as a sports official, coach or manager;

(9) The need for deterring the defendant and others from violating the law;

(10) The offense involved fraudulent or deceptive practices committed against any department or division of State government;

(11) The imposition of a fine, penalty or order of restitution without also imposing a term of imprisonment would be perceived by the defendant or others merely as part of the cost of doing business, or as an acceptable contingent business or operating expense associated with the initial decision to resort to unlawful practices;

(12) The defendant committed the offense against a person who he knew or should have known was 60 years of age or older, or disabled;

(13) The defendant, while in the course of committing or attempting to commit the crime, including the immediate flight therefrom, used or was in possession of a stolen motor vehicle;

(14) The offense involved an act of domestic violence, as that term is defined in subsection a. of section 3 of P.L.1991, c. 261 (C.2C:25-19), committed in the presence of a child under 16 years of age; and

(15) The offense involved an act of domestic violence, as that term is defined in subsection a. of section 3 of P.L.1991, c. 261

(C.2C:25-19) and the defendant committed at least one act of
domestic violence on more than one occasion.

N.J. Stat. Ann. § 2C:44-1a.  The mitigating factors are as follows:

(1) The defendant's conduct neither caused nor threatened serious
harm;
(2) The defendant did not contemplate that his conduct would
cause or threaten serious harm;
(3) The defendant acted under a strong provocation;
(4) There were substantial grounds tending to excuse or justify the
defendant's conduct, though failing to establish a defense;
(5) The victim of the defendant's conduct induced or facilitated its
commission;
(6) The defendant has compensated or will compensate the victim
of his conduct for the damage or injury that he sustained, or will
participate in a program of community service;
(7) The defendant has no history of prior delinquency or criminal
activity or has led a law-abiding life for a substantial period of time
before the commission of the present offense;
(8) The defendant's conduct was the result of circumstances
unlikely to recur;
(9) The character and attitude of the defendant indicate that he is
unlikely to commit another offense;
(10) The defendant is particularly likely to respond affirmatively to
probationary treatment;
(11) The imprisonment of the defendant would entail excessive
hardship to himself or his dependents;
(12) The willingness of the defendant to cooperate with law
enforcement authorities;
(13) The conduct of a youthful defendant was substantially
influenced by another person more mature than the defendant.

N.J. Stat. Ann. § 2C:44-1b.

The trial judge determined that aggravating factors 1, 3, 6, and 9 applied and that no

mitigating factors applied.  Thus, the court determined that the aggravating factors "substantially

preponderate" over the mitigating factors.  (*See* ECF 8-50 at 10).

A presentence report was prepared for the trial court prior to the judge arriving at

Petitioner's thirty-year sentence.  It included a psychological evaluation of Petitioner by Dr.

Hasson from 2002.  (*See* ECF 8-6 at 21-32).  This evaluation sprang forth from a previous

criminal proceeding against Petitioner.  The pressing issue before Dr. Hasson was whether

Petitioner was competent to stand trial in 2002.  The Appellate Division on direct appeal arising

from Petitioner's 2006 trial outlined the key points of Dr. Hasson's evaluation as follows:

> A mental evaluation conducted prior to sentencing disclosed that
> defendant was of borderline intelligence, scoring sixty-one on an
> intelligence scale.  However, the examining psychologist was of
> the opinion that the score might "not be a valid measure of
> [defendant's] intellectual ability as throughout the interview, he
> appeared to ... try to exaggerate deficits and other problems."  The
> psychologist noted in this respect that defendant's "spontaneous
> speech before testing" was better and that during the intelligence
> assessment, defendant seemed to "exaggerate his verbal
> limitations."
>
> . . . .
>
> The psychologist found that defendant suffered from "cognitive
> limitations," "character disorder and explosive temper,"
> "expressive language difficulty," and an inability "to interact with
> others."  He also found that defendant was "not a danger to self or
> to others."

*West*, 2009 WL 2146882, at *7 (footnote omitted).  Ultimately, Dr. Hasson concluded that

Petitioner was competent to stand trial in 2002.  (*See* ECF 8-6 at 31).

   The trial court had Dr. Hasson's evaluation at its disposal in arriving at its thirty-year

sentence for Petitioner as it was included in the pre-sentence report.  Nevertheless, as outlined

above, the trial court determined that mitigating factor four did not apply (nor did any mitigating

factors).  The Appellate Division found that the trial court's failure to cite to mitigating factor

four was not an abuse of discretion because Dr. Hasson's diagnosis "did not rise to such a level

that would 'excuse or justify the defendant's conduct' as required by statute and illustrated by

cases in which the mitigating factor was found to exist."  *West*, 2009 WL 2146882, at *7.

   Petitioner asserts counsel was ineffective by failing to obtain a more recent mental

evaluation of Petitioner at the time of sentencing in 2006, rather than the 2002 evaluation in the

presence report.  Petitioner claims that had counsel done so, a report similar to Dr.

Greenfield's 2011 report produced during Petitioner's PCR proceedings would have been

furnished at sentencing.

Petitioner fails to show that the state court's denial of this claim was an unreasonable

application of *Strickland*.  Even if this Court were to presume that a report like Dr. Greenfield's

would have been produced in 2006, Petitioner fails to show that denying this claim due to a lack

of prejudice would have been unreasonable.  First, the 2002 and 2011 reports indicated

Petitioner's mental health at length.  While the 2011 report indicated that a diminished

capacity/intoxication defense *may have* been available, as indicated above, given the strong

evidence against Petitioner at trial, that defense would not have changed the outcome of this

proceeding to a reasonable probability.  This Court readily notes that there is of course a

difference between a successful diminished capacity defense at trial and that a sentencing

mitigating factor applies.  However, the evidence in this case clearly indicates Petitioner's

actions in shooting Ponder numerous times at close range could neither be excused nor justified.[2]

Accordingly, Petitioner fails to show that he is entitled to federal habeas relief on Claim

VI.

## V.    CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of

appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. §

2254.  A certificate of appealability may issue "only if the applicant has made a substantial

---

[2] Furthermore, given the numerous aggravating factors cited by the trial court (and not contested
by Petitioner), even if mitigating factor four was found in Petitioner's favor, this Court cannot
say that the state court's denial was an unreasonable application of *Strickland* prejudice prong.
The numerous aggravating factors cited by the trial court would have clearly still outweighed the
sole mitigating factor.

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Applying this standard, this Court finds that a certificate of appealability shall not issue in this case.

## VI.    CONCLUSION

For the foregoing reasons, the habeas petition is denied and a certificate of appealability shall not issue.  An appropriate order shall be entered.


DATED:  July 14, 2020                                         s/Madeline Cox Arleo_____
                                                             HON. MADELINE COX ARLEO
                                                             United States District Judge